UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| LINDA MARIE GRAY,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No. CV 11-294-C-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Linda Marie Gray's Petition for Review (Dkt. 1), filed June 24, 2011, seeking review of the Social Security Administration's final decision to deny his disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

On April 25, 2008, Linda Marie Gray ("Petitioner") applied for SSI disability benefits, alleging a disability onset date of April 6, 2008, when she was 49 years old. (AR 135, 138). Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 74, 77, 82, 86). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 92). On March 9, 2010, ALJ James W. Sherry held a hearing at which time Petitioner, represented by a non-attorney representative, appeared and testified. (AR 32-63). An impartial vocational expert, Daniel R. McKinney, Sr., also appeared and testified. (*Id.*) At the time of the

**MEMORANDUM DECISION AND ORDER - 1**

hearing, Petitioner's past relevant work was as a cashier/checker, drafter, appliance sales, and designer/detail drafter. (AR 25).

On March 29, 2010, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 13-31). The Appeals Council denied review on August 20, 2010 (AR 9) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by failing to properly determine her Residual Functional Capacity (RFC), failing to properly explain the weight given or give appropriate weight to opinion evidence from Social Worker Snyder, and failing to properly evaluate the credibility of Petitioner and her ex-husband.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA since April 6, 2008, the alleged onset date. (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: bipolar, type II; rapid cycling; posttraumatic stress disorder (PTSD); and borderline personality disorder. (AR 18).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

**MEMORANDUM DECISION AND ORDER - 5**

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limits: she is capable of simple, routine and repetitive tasks in a low stress environment with only occasional decision-making and changes in a work setting.  She is also capable of occasional interaction with the general public and with supervisors and can frequently interact with coworkers.  (AR 21).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  The ALJ found that Petitioner could not perform any past relevant work but considering her age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.  (AR 25).

**B.     Analysis**

    **1.     Social Worker Testimony**

Under the Social Security regulations, social workers fall into the category of "other sources who are not acceptable medical sources."  20 C.F.R. § 404.1513(d).  While opinions

from these sources are not acceptable sources for evidence of an impairment, the regulations permit a claimant to submit information from social workers, and others sources that are "not acceptable medical sources" to help the ALJ to determine the severity of an impairment and "understand how [the claimant's] impairment affects [the claimant's] ability to work." *See* 20 C.F.R. §§ 404.1513(d), (e).  The ALJ may reject other source testimony by furnishing reasons germane to that particular witness.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Social Security Ruling 06-03p states: "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'"  SSR 06-03p, *available at* 2006 WL 2329939.  However, this ruling also recognizes that depending on the particular facts in a case, an "opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source' . . . ." *Id*. (emphasis added).

Petitioner argues that the ALJ discounts the opinion of her social worker, Peggy Snyder, for inadequate reasons.  Ms. Snyder met with Petitioner for an hour each week for more than two years. (AR 426).  In March 2009, Ms. Snyder completed a Mental Residual Functional Capacity Questionnaire for Petitioner.  (AR 434-439).  Ms. Snyder assessed Petitioner with a current Global Assessment of Functioning (GAF) of 55 and the highest GAF for the past year to be 45. (AR 434).   Ms. Snyder noted no or "mild" limitations in activities of daily living, "marked" limitations in "maintaining social functioning," and that Petitioner had one or two episodes of decompensation within a 12-month period that lasted at least two weeks each.  (AR 438).  She did not complete the portion of the questionnaire that addressed limitations in "concentration, persistence or pace."  (AR 438).

**MEMORANDUM DECISION AND ORDER - 7**

The ALJ stated that "little weight" was given to Mental Residual Functional Capacity completed by Ms. Snyder. (AR 24). The ALJ stated the opinion is "not found to be supported by the record as a whole or entitled to any significant weight." (*Id.*) He noted that her statement is inconsistent with the "far less severe symptoms" noted by Dr. Holmes, Petitioner's treating psychiatrist. (*Id.*) The ALJ noted Ms. Snyder's failure to complete the portion of the assessment on Petitioner's limitations in concentration, persistence or pace and that she also failed to elaborate on the statement that Petitioner has a medically documented history of at least 2 years duration. (*Id.*) The ALJ mentions that Ms. Snyder failed to note Petitioner's improvement on medication and how her work relationships were improving. (*Id.*) Lastly, the ALJ noted that there is always a possibility that a clinician may express an opinion in an effort to assist a patient and that because Ms. Snyder is not an acceptable medical source and her opinion is without substantial support from other evidence in the record, it is less persuasive. (*Id.*)

However, some of the reasons given by the ALJ for affording little weight to Ms. Snyder's opinion are improper. The ALJ highlights that Ms. Snyder did not complete some portions of the questionnaire but does not explain why this should afford little weight to her opinion in other respects. Elsewhere, the ALJ misstates the record. He discounts Ms. Snyder's opinion because she allegedly failed to note Petitioner's improvement on medication. However, on the first page of the questionnaire, Ms. Snyder stated: "Following some medication adjustments, Linda's Bipolar Disorder has improved and her moods are more stable." (AR 434). Then, the ALJ presumes, without any citation or justification other than the broad possibility, that Ms. Snyder may have given her opinion in an effort to assist Petitioner obtain benefits. The implication he presumes is that Ms. Snyder is overstating her opinion; but there is nothing

**MEMORANDUM DECISION AND ORDER - 8**

described by the ALJ to support such an implication.  Lastly, the fact that, as a social worker, Ms. Snyder is "not an acceptable medical source" is not reason alone to afford her opinion less weight.  Indeed, the regulations recognize the fact that an opinion is from someone who is not an acceptable source *may* justify giving that opinion less weight *but* the regulations also recognize that "an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source' . . . ."  SSR 06-03p, *available at* 2006 WL 2329939 (emphasis added).

      The ALJ also criticizes Ms. Snyder's opinion as inconsistent with the treatment notes of the Petitioner's treating psychiatrist, Dr. Holmes.  Yet, there are no identified, specific, discrepancies or inconsistencies between Ms. Snyder's opinion and Dr. Holmes' records.  The bulk of Dr. Holmes' treatment notes focuses on Petitioner's response to her various medications and her current employment and related issues. (AR 394-404, 441-42, 451-56, 458.)  Ms. Snyder's Mental Residual Functional Capacity assessed Petitioner's functional limitations. (AR 434-39.)  In contrast, documents in the administrative record from Ms. Snyder include mental health assessment forms that discuss Petitioner's family, medical and psychiatric history, her vocational, educational, social and functional abilities, and an assessment of the Petitioner's mental status including appearance, speech, thought process and content, mood, affect, judgment and insight.  (AR 375-78, 443-450).  There are also "120 Day Review" forms which assess Petitioner's progress toward goals such as taking her medication, securing housing, working on anger management, understanding appropriate boundaries in interpersonal relationships, and time management.  (AR 383-393).  Ms. Snyder saw Petitioner once a week for two years whereas Dr. Holmes saw Petitioner approximately every two to three months.  They had

**MEMORANDUM DECISION AND ORDER - 9**

different roles in their treatment of Petitioner and their records reflect these differences. But the ALJ gives short shrift if any consideration to such differences, and seems to discard the significance of such differences entirely based upon his presumption that Ms. Snyder is trying to help the Petitioner obtain disability benefits. In particular nature, and in toto, the reasons the ALJ has provided for rejecting Ms. Snyder's opinion are not proper. While her opinion cannot be used as evidence of an impairment because she is not an "acceptable medical source," the ALJ must nonetheless provide germane reasons for giving her opinion "little weight," particularly when the record suggests that his response to her opinion evidence was unsupported.

### 2. Petitioner Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Such findings must be supported by specific, cogent reasons. *Id*. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting testimony. *Id*. The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third

**MEMORANDUM DECISION AND ORDER - 10**

parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Additionally, the ALJ may consider location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and, treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling (SSR) 96-7p.

With respect to the Petitioner's credibility, the ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 22). He also stated that he has "fully considered all of the evidence submitted relating to claimant's subjective complaints, including her activities of daily living, prior work record, precipitating and aggravating factors, effectiveness and use of medication and therapy, alleged and/or demonstrated functional restrictions, and the duration, frequency and intensity of the alleged's symptoms." (AR 24).

The ALJ found that Petitioner's subjective statements are not supported by "commensurate objective medical findings" and discusses Dr. Holmes' medical records. (AR 23). The ALJ describes alleged discrepancies in the record, for example, that Petitioner gave Dr. Holmes and Dr. Alexander different reasons for why she left a job. (*Id*.) There are also discrepancies noted between Petitioner's self-reports and other evidence in the record, in terms of her daily activities such as gardening, housework and personal care. (AR 23.) For example, Petitioner self-reported that she was doing less in her personal care but other evidence indicates

**MEMORANDUM DECISION AND ORDER - 11**

Petitioner is nicely dressed and well-groomed and has no problems in her personal care activities. (*Id*.) The ALJ acknowledges that Petitioner has continued to work after her alleged onset date, although this work did not constitute "substantial gainful activity," it indicates that her daily activities have been "somewhat greater than the claimant has generally reported." (AR 24).

The ALJ made the proper considerations when assessing Petitioner's credibility; he considered inconsistencies in her testimony and conduct, her daily activities, her work record and evidence from physicians. Where, as here, there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is supported by the requisite findings and record evidence. Here, it is, and the Court will not substitute its own assessment for that of the ALJ.

### 3. Lay Witness Testimony

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The ALJ is required to consider competent lay testimony, but in rejecting such evidence, he must only give

reasons for doing so that are "germane to [the] witness." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Mr. Gray's testimony regarding Petitioner's symptoms was similar to Petitioner's own description. (AR 248-256). The Court agrees with Petitioner that some of the reasons given by the ALJ for rejecting the testimony of her ex-husband, James Gray, were not proper, including that he was not medically trained, his statements were not made under oath and constitute hearsay, secondary gain was involved, and that he researched Petitioner's condition online. (AR 24). While these were not legitimate reasons for rejecting Mr. Gray's testimony, the ALJ did give other reasons that were sufficient. Specifically, the ALJ noted that, similar to Petitioner's testimony, Mr. Gray's statement was not consistent with Petitioner's daily activities and preponderance of opinions and observations by medical doctors. (AR 25). In *Valentine v. Comm'r Soc. Sec. Admin.*, the Ninth Circuit held:

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.

574 F.3d 685, 694 (9th Cir. 2009). This case is similar to *Valentine* where Mr. Gray's testimony is similar to that of Petitioner that was properly rejected by the ALJ and the ALJ notes that he is rejecting Mr. Gray's testimony for similar reasons. (AR 25). Accordingly, the Court finds that the ALJ gave germane reasons for rejecting Mr. Gray's testimony.

**MEMORANDUM DECISION AND ORDER - 13**

### 4. Residual Functional Capacity

A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding the ALJ was not required to incorporate opinion evidence which was permissibly discounted).

Petitioner contends that the residual functional capacity (RFC) assessed by the ALJ failed to incorporate the limitations found by the examining physician Dr. Alexander, Ms. Snyder, or those noted by a past employer. Specifically, Petitioner contends that the ALJ failed to include Dr. Alexander's finding of moderate to marked limitation in the ability to interact, adapt to change, respond to authority and stress and maintain consistent behavior. (AR 425-430). Dr. Alexander also noted mild to moderate limitations in Petitioner's ability to sustain concentration and persist. (*Id*.) Petitioner contends a past employer also noted her inability to maintain a productive pace and stated she was absent at least twice a month. (AR 257-258).

The ALJ stated he "gives weight" to the assessment done by Dr. Alexander. (AR 24). In her assessment, Dr. Alexander stated: "[A]bility to understand and remember simple instructions is unimpaired. Ability to understand and remember complex instructions and sustain concentration and persist is mildly to moderately impaired. Ability to interact appropriately in the workplace, adapt to change, respond to authority and stress, and maintain consistent behavior is moderately to markedly impaired." (AR 430). The Court finds that the RFC formulated by the ALJ does not adequately incorporate Petitioner's limitations with respect to concentration and persistence. The ALJ's RFC determination limits Petitioner to "simple,

**MEMORANDUM DECISION AND ORDER - 14**

routine and repetitive tasks in a low stress environment with only occasional decision-making and changes in a work setting" and "occasional interaction with the general public and with supervisors and can frequently interact with coworkers." (AR 21). This RFC does not address her concentration or persistence. The result of this RFC relates to the adequacy of the ALJ's hypothetical questions to the VE regarding other work that Petitioner could perform, and the adequacy of the VE's responses that the ALJ relied on in finding Petitioner not disabled at step five. Specifically, the ALJ asked the VE about the work a hypothetical person could perform limited to "simple, routine and repetitive tasks in a low-stress job, meaning occasional decision-making and only occasional changes in the work setting; occasional interaction with the public, frequent interaction with co-workers, and only occasional interaction with supervisors." (AR 57).

The Commissioner argues this case is analogous to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. In that case, there was some evidence of the claimant's slow pace, but the only concrete functional limitation was that claimant could perform "simple tasks" and the ALJ formulated a RFC that limited the claimant to "simple, routine, repetitive sedentary work." *Id*. at 1173-74.

The Court finds this case more analogous to *Brink v. Comm'r of Soc. Sec. Admin*. 343 Fed.Appx. 211 (9th Cir. 2009). Although *Brink* is an unpublished decision and only of

**MEMORANDUM DECISION AND ORDER - 15**

persuasive value,[1] it is instructive in distinguishing *Stubbs-Danielson*. The Ninth Circuit noted that in contrast to *Stubbs-Danielson*, the medical evidence in *Brink,* "establishes . . . that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite." *Id* at 212. The Ninth Circuit held that the hypothetical question posed to the vocational expert should have included Brink's moderate limitations in concentration, persistence, or pace. *Id*.

In this case, as in *Brink*, the ALJ accepted evidence of Petitioner's moderate limitations with concentration and persistence, but the RFC only included a limitation of "simple, routine and repetitive tasks." The Court finds that the RFC is incomplete in light of the other findings made by the ALJ. Because the ALJ did not reject Dr. Alexander's opinion, it was error not to include these limitations in the ALJ's RFC assessment.

As to Petitioner's contention regarding the Work Activity Questionnaire completed by her former employer, Larry's Food (AR 257-258), the statement is that of an "other source" as defined in the regulations at 20 C.F.R. §§ 404.1513(d) and 416.913(d). As is the case with all other source or lay testimony, the opinions must be considered and the weight given to them explained. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If the testimony is rejected, the ALJ must given specific "germane" reasons for doing so. *Id. See also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore

---

[1] Ninth Circuit Rule 36-3(b) provides: "Unpublished dispositions and order of this Court issued on or after January 1, 2007 may be cited to the court of this circuit in accordance with FRAP 32.1." However, Ninth Circuit Rule 36-3(a) provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

**MEMORANDUM DECISION AND ORDER - 16**

*cannot* be disregarded without comment.")  The ALJ discussed the Work Activity Questionnaire when assessing Petitioner's credibility (AR 24) but nowhere in the ALJ's decision does he discuss the weight given to this questionnaire or any reasons for rejecting it.  This is in error.

While the Commissioner argues that any error would be harmless, the Court disagrees.  The case relied upon by the Commissioner, *Stout v. Comm'r, Soc. Sec. Admin.*, specifically holds the opposite of what the Commissioner asks.  In *Stout*, the Ninth Circuit noted that the court has not once concluded that "an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless" and instead has "consistently reversed the Commissioner's decisions for failure to comment on such competent testimony."  454 F.3d 1050, 1055-56 (9th Cir. 2006).

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's determination regarding Petitioner's and Mr. Gray's credibility, the evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence readily may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ for rejecting the opinion of Ms. Snyder, Petitioner's social worker, are improperly incomplete.  The fact that Ms. Snyder is a non-

**MEMORANDUM DECISION AND ORDER - 17**

acceptable medical source is not a sufficient reason to reject her opinion. Additionally, the ALJ did not properly incorporate all the limitations recognized in the record in his residual functional capacity assessment, and subsequently in his hypothetical posed to the vocational expert. Nor did he discuss the weight given to the opinion found in the Work Activity Questionnaire completed by Petitioner's former employer. Therefore, the Court remands this action for further proceedings to correct the errors.

## V.  ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **September 17, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge